241510, Adidas v. Thom Browne. Good afternoon, and may it please the Court. My name is Adam Charnas, and I represent Adidas in this appeal. This case involves a fundamental question of fairness under Rule 60b-3. During discovery in this case, Thom Browne didn't produce four emails, four critical emails that included discussions among their most senior executives about the very issues at the heart of the trial. Those emails contradicted Thom Browne's core defense of trial and would have powerfully impeached their witnesses at trial. And the undisputed facts found by the district court showed that Thom Browne's document reviews suffered numerous unnecessary lapses. The documents were collected from the document custodians, were flagged by Thom Browne's counsel as needing further review, but were never reviewed. And Thom Browne's witnesses conceded that they should have been reviewed, establishing the standard of care here. They expressly testified the documents that were collected and flagged for further review should have been reviewed. So in these circumstances, whether the Court adopts a negligence standard or follows the numerous other circuits that have said that negligence is not required in the discovery context, we think the district court erred and should be reversed. Now, to start with what's – Can I just – so you offered a couple of standards, and those are on the list. Obviously, another standard on the list would be something higher, something sort of more intent-like.  And part of untangling whether that's really what 60B3 requires is to understand the relationship between 60B2 and 60B3. Can you explain to me your vision of how those two fit together without unnecessary overlap or gaps? Right. Well, 60B3 is a – is a circumstance in which the party who prevailed at trial has some responsibility for the failure of the documents, in this case, the document production, to be produced. So it's either fraud, misrepresentation, or misconduct. That's what's required. 60B2 is a circumstance essentially where it's unrelated to the prevailing party's actions. It's evidence just shows up – this is how I think of the difference. Evidence shows up after trial. It's not due to anyone's fault or anybody's actions. It wasn't in the possession of the prevailing party. But critical evidence shows up that would change the result. And that – and I think that's how courts rationalize the two and why the standard is different. The standard is higher in 60B2 context because there is no responsibility at all. The document wasn't in the prevailing party's possession, and – and therefore, the losing party that says we have – we have new evidence must show that it likely would have prevailed. It probably would have prevailed with this evidence. And that's not required in all the cases, say, under 60B3. And that's because there is some action by the prevailing party that led to either the fraud, misrepresentation, or misconduct. And what did – what did Judge Rakoff – I'm sorry. Go ahead, Judge. No, no, no. Go ahead, Judge Kramas. What did Judge Rakoff find about this? He – well, he found two critical things. First of all, he adopted a negligence standard. So we had argued in line with what the First Circuit and the Fourth Circuit, the Fifth Circuit, the Seventh Circuit, the Ninth Circuit had held, that no responsibility – no standard of responsibility was necessary if there was – that even an inadvertent or innocent failure to produce documents could be misconduct. Tom Brown argued that it had to be intentional or reckless, and he sort of took a middle ground. And then he found that there was no negligence on these facts. And so, you know, we – we dispute or disagree with his standard he adopted. He found so-called excusable neglect, right? He found that there was an understandable excusable mistake. And, you know, we think this Court can actually dodge the question about whether, for example, the First and Fourth Circuits were correct in their standard that even inadvertent or innocent failures to produce could be misconduct, and the negligence standard found by Judge Rakoff by simply finding that the district court erred in concluding that there was no negligence. As we think there – on the facts found by the district court, we don't dispute any of his factual findings. On those facts, we think that there is clear negligence here. I mean, the fact of the matter is that the – that Tom Brown agreed to produce these very documents. They agreed to – Hold on. Hold on. Hold on one moment. So you're not – you're not relying on Section B-3 on fraud, fraud misrepresentation or misconduct? We are. We're arguing on – we're arguing misconduct under B-3. Uh-huh. We are – we are alternatively arguing B-2, but I think B-3 is the most straightforward path here. And as I was saying, the fact of the matter is that the parties agreed. Tom Brown agreed to collect documents from nine docu – nine – Before you get into the facts, I want to follow up on Judge Robinson's question. It looks to me like B-3, listing fraud and misrepresentation and misconduct, go to pretty serious process fouls, you know, just bad behavior, as opposed to B-2, which, you know, has to change the outcome. And so I – it's hard for me to see how just – just a mistake would fall within that listing of fraud and misrepresentation. A discovery mistake. Right. Well, a couple of things, Your Honor. First of all, as I've said a couple of times now, numerous circuits, a majority of the circuits are held – I understand that. But what's the reason, under your theory of how B-2 and B-3 fit together, that a mistake, a discovery of failure, would be encompassed by this kind of process foul and not the outcome changing B-2? Right. Well, I think it falls under the plain definition of misconduct. I mean, the parties have cited a large number of dictionaries in our – in our various briefs, but there's no question that misconduct is defined as, for example, failure to comply with one's obligations. That's defined – that's a dictionary definition of misconduct. And that fits our situation for a tee. Tom Brown promised to produce these documents. They were collected. They were flagged as needing review, and they didn't do it. So we feel that falls clearly within the definition of misconduct, and it is their responsibility. There are witnesses at the hearing testified and agreed, conceded, that because the documents, the e-mails were flagged as needing further review, they should have been reviewed. And – What about sanctions under Rule 37? That requires an intent to deprive the other party of information, discovery information for use in litigation, in order to get an adverse inference. So it seems odd that that would require a higher kind of mental state than – than reversing the final judgment. I don't think so, Your Honor, because that's a punishment, right? If you do something bad, you get punished for discovery sanctions. 30 – 60B3 goes to fairness, right? The question is, were we treated fairly by Tom Brown during discovery and was the trial fair because of their failure to produce the documents? So I think it's a different – it's a different context. I think there – I think you can be sanctioned for negligent conduct in certain circumstances. I don't think you can get an adverse inference for simply negligent conduct. But you can be sanctioned for negligent conduct during discovery, and their argument that intentionality is required leads to the sort of odd result that you can be sanctioned for conduct but not – the other party not be entitled to it. Isn't there doing a final judgment the sort of most severe sanction? Well, it's not a – it's not a punishment of Tom Brown. It's a result of the fact that we were entitled to a trial based on the evidence. And these were documents that they agreed to produce, that they collected, that they conceded should have been reviewed, and that because of the conduct of their counsel and their counsel's discovery vendor, they never reviewed or produced. So it's just a question of fairness, and that's what 60B3 goes to is a question of fairness. I see I'm out of time. You're reserved a few minutes for rebuttal. Yes. Thank you. We'll hear from that police. May it please the Court. My name is Alexandra Shapiro, and I represent Tom Brown on this appeal. Rule 60B motions are disfavored and granted only in exceptional circumstances, and that's for good reason. Given the policy favoring finality of judgments, which is, I think, one of the reasons that in the recent Blombank case the Supreme Court emphasized that Rule 60B, the entire rule, is to be given a very strict interpretation. And that's especially so in a case like this one where the jury rendered a quick verdict that was affirmed on appeal. Now, there is no basis to disturb the district court's ruling, which is entitled to a substantial amount of deference and reviewed for abuse of discretion. And I want to go to the... Well, wait a minute. The determination as to what the applicable legal standard is is not something that's entitled to any deference, is it? No. No, Your Honor. So that's something we need to figure out on our own.  Correct. And it's an issue of first impression in the circuit, as you know. And I'd like to actually first go to Your Honor's first question to Mr. Charnas, which has to do with the relationship between B-2 and B-3. And I think that is a very important reason why our interpretation of B-3 as requiring at least recklessness, if not intentional conduct, is the correct one. So under B-2, a party can potentially set aside a judgment based on any newly discovered evidence, no matter how it's discovered, and has to — the movement has to meet a very high standard of prejudice. They have to show that the new evidence would have changed the outcome, whereas under B-3, the prejudice standard is much lower. And as a result, it would make no sense to allow people to essentially skirt B-2 and use B-3. Well, no, because, I mean, the prejudice standard is lower precisely because it focuses on circumstances that are created by the conduct of the other side that then went on to win the case. I mean, that, it seems to me, doesn't skirt B-2 because B-2 isn't focused on discovery violations. Well, I guess what I'm focusing on is when you say created by the other side, the question is in what way created, right? And so the question is, is it the product of an inadvertent mistake or mere negligence, or is it something that was deliberate or reckless? So a lot of courts have recognized B-3 as being because of the prejudice standard that's focused on were they able to fairly present their case, rather than would the outcome have been different, as being focused on fairness. If that's true, why does fairness care whether the discovery violation was a intentional withholding versus a negligent withholding? Why does it? Well, so there are a number of reasons. I think you have to start with the presumption of finality and the importance of finality and the balance. But here we have the text of the rule, which is a rule that covers fraud, misrepresentation, or misconduct. We have the canons of construction, which suggests, and the Supreme Court has some of the other cases cited in our brief, that you look at the words surrounding the word fraud and misrepresentation both imply a level of intentionality or at least recklessness. In addition, the advisory committee notes emphasize that the purpose of B-3 is directed at fraud and the like. And we think that the Sixth Circuit case is the better reasoned decision, and it explains why the First Circuit case, which is sort of the leading circuit on the other side of the split, that analysis was based on a false defective analysis about surplusage, because there is no surplusage problem if you interpret the rule as requiring intentional or reckless misconduct, because misconduct could still cover behavior not captured by fraud or misrepresentation, such as humiliation, tampering with witnesses, and other misconduct that doesn't constitute fraud. So, and the last thing that I'd like to point out about B-3 here is that. You could have a negligent misrepresentation, right? I guess this is just following up on Judge Robinson's question. The mental state doesn't bear on the arguable damage to the process, fairness, whether the misrepresentation was intentional or not, does it? Well, I think the idea is that, again, we have to go back to the policy in favor of finality and how that has to be balanced against the need for fairness. And the question is, you know, if you're covering mere negligence, are you going to be overturning far too many judgments? But I also want to discuss negligence, because even if the Court were to hold, as Judge Rakoff did, that negligence suffices, then we are definitely in abuse of discretion territory here. And the judge certainly did not abuse his discretion in finding that Tom Brown's counsel was not negligent. The district court held an evidentiary hearing, entertained briefing, as well as additional depositions, looked at all the evidence, and concluded that a reasonable process was set up and followed. They engaged a highly reputable e-discovery vendor. They collected over a million documents. Well, they did a lot of things, but how could it possibly be that marking documents to be reviewed and then never reviewing them isn't negligent? I mean, I'm sort of gobsmacked at the notion, because if that's not negligence, what is? Well, I think you have to, you know, and I think the judge explained this at some length in the last five pages of his opinion, and as he explained, this was an understandable miscommunication between the e-discovery vendor and the paralegal who had directed the vendor. Well, that goes to the fields that were marked for the search, and we can debate whether that was a reasonable misunderstanding. But that's different from the lawyer not having reviewed the files marked to be reviewed. That wasn't the case. Well, actually, the testimony, and the judge talks about this in his opinion, is that an associate testified that there was a process whereby there was supposed to be a manual check of all the documents marked for further review, and she testified that she endeavored to be careful and review every document marked for further review. Now, the fact of the matter is that apparently she missed these documents. But that kind of thing is inevitable in virtually any civil case in 2025 when you're dealing with e-discovery and large volumes of documents, that sometimes somebody is going to miss a document. And if the standard is so low that that is enough to set aside a judgment, regardless of whether the document would have affected the outcome, we're going to be overturning judgments left and right. So I'm sorry. Is the theory that she did, in fact, review the documents marked to be reviewed, and the only four that she happened to miss were the four that had the bombshell evidence against Anita's? I mean, against your client? What the facts showed was that there was a process that was set up. And I think it's very important when you're talking about negligence in this area to focus on what kind of process was set up. And the process that was set up included a check, a manual check. And she endeavored to manually review all of the documents marked for further review. Those documents apparently slipped through the cracks. So we don't know if the box is a passive voice thing. Well, that's what the district judge said. So, no, I know. But I'm asking you now to help me understand. I think we all agree that if nobody had done any manual review of the documents marked to be reviewed, that would be negligence because the process, it wouldn't have even been a process. Is that right? Well, I don't think the court needs to reach that question because that's not what happened. I know. But you and I are having a conversation right now. And I'm just trying to figure out where the lines are in your position. So if there wasn't a process that called for a manual review and those were just hanging out there saying to be reviewed. Well, I think what, you know, because you have to take this at a certain level of generality because obviously every document review is different. But I think as long as the law firm sets up a process and there are people who are reviewing the documents and someone, there's a procedure set up such that documents that meet search terms are, you know, tagged and someone is supposed to go through them and, you know, doesn't just completely not do that. And there's, you know, and this was an experienced, these were experienced paralegals and lawyers. So the fact that she missed a few documents, I also do want to do. Well, she missed a few documents. So you're saying, all right, I'm going to move from the process question because I don't think we're going to, we're not. Well, I guess what I was. Let's assume there was a process here and that's what you're relying on is to say it's not negligent. And then in executing the process, let's assume that the person reviewing missed, just in good faith, but somehow missed 50 percent of the documents marked. Well, that would clearly be negligent if they missed 50 percent of the response. Okay. Do we know how many, do we know how many documents were actually manually reviewed versus how many were missed? I don't think we know that. That wasn't, I don't think that the record was developed in that way. Well, but you're sort of making it sound like there were thousands of documents and force went through. Well, I think it's their burden to show that there was negligence here. And I respectfully, Your Honor, I think that you're holding them to too high a standard and negligence is, under this Court's decision in Flaminia, a highly fact-specific inquiry. And the movement has to show by clear and convincing evidence under B3 as well. And so I respectfully submit that, you know, on the facts here, you should defer to the district court, which heard from the witnesses and examined this in extensive detail. So your position is that it's not, forget about computer discovery. In the olden days, we used to just have rooms full of boxes. I'm familiar with that. Yeah. I'm old enough to know. And you'd go through them. And if you missed a document, not because you were being deceptive, just because you missed it, your position is that's not negligence. That's something else. No, Your Honor. I think it depends on the context and the volume of documents. If you have two boxes of documents and you missed something, that probably is negligence. But here we're talking about an enormous volume of e-discovery. How many documents were marked to be reviewed? I don't know that that's in the record. Okay. I'm sorry. You were telling me. I'm sorry, Your Honor. I'm out of time. I did want to address, Your Honor referred to these e-mails as bombshell documents. And I think that that is not at all the case. And certainly the district court's well-reasoned decision as to 60 v. 2 is entirely consistent with the trial record. None of the e-mails even related to any of the accused products. As the district judge explained, three of them were related to the Barcelona football club and the views of the football club in a context and at a time after Adidas, which is known as a very aggressive enforcer of its trademark, had already sent a demand letter and the Barcelona football club was in a dispute with Adidas, had an alliance with Nike, and had been accused by Adidas with respect to seven stripes of violating Adidas' trademark. I hear you about the Barcelona. I think I'm mostly looking at the head of menswear writing, as Adidas has such a big presence in the sporting world, it is inevitable that our four-bar in white be read as Adidas stripes, especially on accessories. And your point is, oh, he was talking about accessories, but one might think that a four-sure eye, if he thinks it's going to create confusion on accessories in the sporting world, it would be particularly likely to create confusion on sportswear. Well, no, Your Honor. I think, again, that e-mail, I believe Your Honor is referring to e-mail number 2. Yep. That was also in the same context, after Adidas had already raised the specter of a dispute with its demand letter and they were trying to be careful. But I think, more importantly, just taking a step back from these e-mails, as the district court, which, you know, presided over the trial and had firsthand knowledge of, as he put it, the jurors' body language, had heard from the witnesses, the key issues at trial were the physical appearance of the products, which the jurors could view for themselves. And I would urge the court to look at the pictures in the appendix, and you'll see the — If I may, from out here in New Haven, Connecticut, can I ask you to help me understand Judge Rakoff's examination of Rule B.1? What, if anything, did he have to say about mistake, inadvertent surprise, or excusable neglect? The only issues that were moved on were B.2 and B.3. So there was no motion based on any other subsection of Rule 60. All right. So let's turn to 2. What exactly did Judge Rakoff hold regarding B.2? He held that Adidas had failed to carry its burden of demonstrating that the four emails would have affected the outcome at trial. Based on his presiding over the trial, he concluded that they were at best of marginal relevance because the trial focused — And what was the basis for that, for those findings? So the trial focused, as I was starting to say, on the jury's assessment of the physical appearance of the Adidas mark versus the accused products, as well as a battle of the experts. And clearly the jury, which was only out for two hours, rejected Adidas' experts and found them not to be credible. The judge also talked about certain aspects of the physical appearance that shows that they're not likely to lead to confusion. Tom Brown has four bars that are horizontal, whereas Adidas almost invariably has three stripes which are vertical. And in addition, the two products, two types of products, are sold in completely different markets. Adidas is a mass consumer product, whereas Tom Brown is a luxury good. With respect to B2, was there any decision by Judge Rakoff that could have been different from that which he came down with? In other words, isn't there a — what are the sanctions or actions that the district court could take in this case? Well, I think on a motion like this, after you've got a judgment which has been affirmed on appeal, all he could have done would have been to grant the motion if he had found that the e-mails would have affected the outcome at trial. And he found that they definitely would not have affected the outcome based on his own observations presiding over the trial and his analysis of the four e-mails. And what was the basis for those findings? So, again, the basis for the findings was that, you know, the e-mails at most could have been argued to be relevant to bad faith, but the Polaroid — none of the other Polaroid factors. And as I said, you know, his observation was that the focus of the trial was on the physical — the juror's assessment of the products, how they looked, the experts, as well as Tom Brown's. One of its principal defenses was that Adidas was a very aggressive enforcer of its trademark and believed it owned all stripes, and he found that that was a theme that resonated with the jury. And, in fact, so — and all of those findings are entitled to deference by this court. Under 60 v. 2, there's no legal question as to the standard. It's really just a question of whether the judge abused his discretion. Thank you. Thank you, counsel. Thank you. So, first of all, counsel foresaw chaos. District courts would be overturning judgments left and right if the court adopted the standard — either standard, negligence or the First Circuit, Fourth Circuit standard. But we know that's not the case. We have empirical evidence. The First Circuit decision was almost 40 years ago. The Fifth Circuit, on which the First Circuit relied, was decided in 1978, and I don't think there's any evidence that there's been a flood of 60 v. 3 motions burdening the district courts or the circuit courts in the First Circuit, the Fourth Circuit, and the other circuits that adopted the same standard. It's still a very difficult standard to meet. It's unlikely you're going to get evidence after a trial that you wouldn't get before. The only reason we got that here is because there's parallel litigation in London, and Tom Brown's London counsel was more ethical, more competent, more diligent, whatever adjective you want to use, and produced the documents in London. Otherwise, we wouldn't have even known about this. Well, I don't know about the floodgates problem, but there does seem to be a footfall problem, that any kind of situation where you have a negligent, you know, failure to produce an e-mail falls under your standard for v. 3, doesn't it? Well, I think that it's not any failure. Right. Here we have, I think, a relatively unique set of circumstances. They promised to produce these documents. We agreed on custodians, years, keyword searches. They said that they agreed that any document that had the word Adidas in it, that was held in the e-mail boxes of these nine custodians, that was written between 2005 and 2021, they would produce. And then they flagged it in their internal document review system as needing further review. And they communicated to their outside e-discovery vendor, Consilio. They said, create a subset of documents that — I guess what's the floor for your standard? Well, Your Honor, I don't — you know, it's interesting. If you look at the other circuits, at their cases, the First Circuit, Fourth Circuit, and so forth that I've been mentioning ad nauseam, none of them really identify a standard. What they say is on the facts of this case, there is misconduct. And the closest case is the Fourth Circuit's decision in Schultz. In that case, there was a document that came to light, it was a Coast Guard document, after trial, after final judgment, that was in counsel's possession, the plaintiff's possession, plaintiff's counsel's possession, that came to light. And the Fourth Circuit said it doesn't matter. It said counsel vigorously argues it wasn't intentional, they didn't produce the document. And the Fourth Circuit said it doesn't matter. It's still misconduct. It can't be excused that when counsel — But it's — if, as you say, it's the facts of this case which counts, we have to rely on Judge Rakoff to a great degree, do we not? Yes. We have to rely on the facts found by Judge Rakoff, and we don't dispute those facts. You know, we accept his factual findings. What we don't accept is, I think, the legal judgment. And I disagree with my friend a little bit on what — on the standard of review here, because I think what is — what the standard of care is, is essentially a legal question. The facts are the facts. We take Judge Rakoff's finding of the facts here. But we don't — but the standard of care is not even disputed, because their witnesses testified at the hearing that documents that are — their law firm witnesses testified that if documents are flagged for further review, they should be reviewed. That's page 306 of the appendix. That when you mark something for further review, it ultimately should be reviewed. That's the standard of care here. The documents should have been reviewed, and they were not reviewed, and therefore  But in a sanctions context, that's usually considered negligent, right? Failure to preserve or produce relevant materials. That's absolutely right, Your Honor. And the — sort of the district court, I think, let them off the hook too easy here. It's not — this is not a situation where it was sort of an innocent, understandable miscommunication, as the district court said, for this reason, which is that the law firm paralegal said to Concilio, create this set of documents. And they didn't leave it there. Concilio emailed back and said, here's what I've done. All documents that hit the privilege terms that are not coded for responsiveness, privilege, or confidentiality, not coded for. Now, you and I don't know what that means. But this experienced paralegal, as Counsel said, either knew what that meant, which meant that since I — since she coded it for needs further review, it was coded and wouldn't be included, or it was her obligation to say, well, wait a minute. What if she didn't know what that meant? What did that mean? So, you know, this is a situation where, you know, we tell our — our summer associates, Your Honors, when you get an — they get an assignment from a lawyer, they go back to their office, write an email to the lawyer and say, here's what you told me to do to avoid miscommunication. And that's what happened here. Concilio said, here's what you told me to do. Sent it back to her, and she either — we don't know what happened. She didn't remember. She either ignored the email. She didn't understand. But what she didn't do is what her professional obligations required her to do, which is follow up and say, hey, wait a minute. What does it mean not coded for privilege and responsiveness? I coded these for needs further review. Are they included or not? And they never did that. And when they had the associate at the end go back, supposedly, who testified, they had somebody go back to review all documents that were flagged for needing further review, and she also missed them. So there are multiple stages here. Now, I — Let me hear your argument. Let's say the emails were — there were no even remotely hot documents, that they were just barely relevant because they hit on some search terms. Do you think that's still — still got to vacate the judgment? No, Your Honor. If the emails were duplicative or if they were mundane — Why? Why does that make a difference under v. 3? Because — well, failure to produce might be a misconduct. But in addition to misconduct is a requirement that they substantially interfered with our ability to fully and fairly present its case — present our case. So you have to meet that standard. You know, the district court basically agreed that that standard was satisfying here and that the cases, including cases — not this Court, but district courts in this circuit and other circuits basically apply the same standard. And they say, among other things, there's substantial interference with your ability to litigate the case if it denied — if the failure to produce the documents denied the party access to evidence that is probative and unimportant issue or closed off potential fruitful avenues of direct or cross-examination. And those — these documents certainly did that here. Your Honor quoted one of them. You know, these documents were — where senior executives at Tom Brown expressly talked about how there was confusion. And there was confusion for different — you know, they said, well, there's confusion with a blazer. And the district court said, well, that's a blazer. That's not athletic wear. Well, as — as Your Honor said, if there's confusion with accessories or on formal wear, a priori, there would be confusion in sportswear. So we think this — that the substantial interference standard is satisfied. The district court alluded to its belief that it was likely satisfied as well. So I don't think it's a case where any failure to produce a document gets you a new trial. You still have to show that it — that it interfered with the ability to litigate the case of the — of the other side. And we think that's satisfied here. Roberts. Thank you, counsel. Thank you both. We'll take the case under advisement.